**In re FRUIT OF THE LOOM, INC., et al., Debtors.**

**Fruit of the Loom, Inc., a New York corporation, and Union Underwear Company, Inc., d/b/a Fruit of the Loom, a Delaware corporation, Plaintiffs,**

v.

**Magnetek, Inc., Defendant.**

**Bankruptcy No. 99–04497–PJW.**
**Adversary No. 09–50948.**

United States Bankruptcy Court, D. Delaware.

July 15, 2009.

Lisa C. McLaughlin, Stephen W. Spence, Phillips, Goldman & Spence, P.A., Wilmington, DE, Christopher P. McCormack, Pullman & Comley, LLC, Bridgeport, CT, for Defendant.

Derek C. Abbott, Matthew B. Harvey, Morris Nichols Arsht & Tunnell LLP, Wilmington, DE, Michael S. Vitale, E. Kenly Ames, English Lucas Priest & Owsley LLP, Bowling Green, KY, for Plaintiffs.

### MEMORANDUM OPINION

WALSH, Bankruptcy Judge.

This opinion is with respect to the motion brought by Defendant Magnetek, Inc. ("Magnetek") requesting that this Court abstain from exercising jurisdiction over the instant adversary proceeding initiated by Fruit of the Loom, Inc. ("New Fruit") and Union Underwear Company (together "Plaintiffs"). (Adv.Doc.# 12.) For the reasons discussed below, I will grant the motion.

### BACKGROUND

On December 29, 1999, Fruit of the Loom, Inc., a Delaware corporation ("Old Fruit"), and a number of its subsidiaries, including Fruit of the Loom, Inc., a New York corporation ("Fruit New York") (collectively, "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (Case No. 99–04497.) Magnetek filed proofs of claim in several of the related cases asserting, among other things, that Old Fruit and certain of its subsidiaries were obligated to Magnetek with respect to certain environmental, health, and safety matters, including those related to a facility in Bridgeport, Connecticut ("Bridgeport Plant"). (Adv.Doc.# 19, p. 4.)

The Bridgeport Plant is the subject of a regulatory filing pursuant to the Connecticut Transfer Act ("Transfer Act"), Conn. Gen.Stat. §§ 22a–134 et seq. The Transfer Act requires, upon transfer—defined as, "any transaction or proceeding through which an establishment undergoes a change in ownership"—certain forms be filed as to properties or business operations classified as hazardous waste "establishments." Conn. Gen.Stat. § 22a–134(1). In 1986, when Farley/Northwest Industries, Inc. ("NWI"), a predecessor entity of Fruit New York, transferred all the stock in the company that owned the Bridgeport Plant to Magnetek, NWI filed a Form III as to PCB contamination at the Bridgeport

Plant. (Adv. Doc. # 12, ex. 1 and ex. 8, p. 2.) Form III is defined as:

> [A] written certification ... [stating] that (A) a discharge, spillage, uncontrolled loss, seepage or filtration of hazardous waste or a hazardous substance has occurred at the establishment or the environmental conditions at the establishment are unknown, and (B) that the person signing the certification agrees to investigate the parcel in accordance with prevailing standards and guidelines and to remediate pollution caused by any release of a hazardous waste or hazardous substance from the establishment in accordance with the remediation standards.

Conn. Gen.Stat. § 22a–134(12). Subsequently, in 1988, NWI entered into a consent order with the Connecticut Department of Environmental Protection ("DEP") obligating NWI to investigate and remediate the PCB contamination, including designing and installing a groundwater extraction system to address the contamination. (Adv. Doc. # 12, pp. 2–3 and ex. 1.)

In 2001, Magnetek sold assets located at the Bridgeport Plant. As related to that transaction, upon consultation with the DEP, Magnetek filed another Form III pursuant to the Transfer Act. At the time of its filing, Magnetek believed that the DEP would look to NWI's first filed Form III for compliance with the 1988 consent order. (*Id.* at pp. 7–8.) However, the Transfer Act does not address which party is responsible, or whether both parties are responsible, in the situation in which a filed Form III remains outstanding as to the same "establishment" as to which a second Form III subsequently is filed.

In January 2007, the DEP stated that the obligations under NWI's 1986 Form III filing and the 1988 consent order remained outstanding and effective. (*Id.* at

p. 4 and ex. 5.) Subsequent to this reaffirmation of the obligations by the DEP, two independent plaintiffs filed two actions in Connecticut state court against Magnetek seeking to hold Magnetek responsible for continuing and completing investigation and remediation begun pursuant to the 1986 Form III filing and the 1988 consent order, and for obligations arising from its 2001 Form III filing. First, relying on both the 2001 Form III filing and the 1986 Form III filing and 1988 consent order, The Sergy Company, LLC ("Sergy"), the current owner of the Bridgeport Plant, seeks, among other things, to have Magnetek "complete" the PCB remediation ("Sergy Action"). (*Id.* at ex. 6.) Second, in the form of a civil enforcement proceeding, the State of Connecticut seeks civil penalties against Magnetek for "failing" to operate the groundwater extraction system established pursuant to the 1988 consent order, which it contends Magnetek is obligated to operate based on its 2001 Form III filing ("Commissioner's Action"). (*Id.* at ex. 7.)

As to the Sergy Action, Magnetek moved to add Fruit New York as a defendant, which the Connecticut state court granted. (*Id.* at p. 8.) Magnetek seeks a declaratory judgment that Fruit New York is liable for the performance Sergy seeks, and that Fruit New York's obligations should be completely discharged before Magnetek is called upon to take any further action as to the Bridgeport Plant. (Adv.Doc. # 19, ex. A, pp. 4–5.) As to the Commissioner's Action, Magnetek similarly moved to add Fruit New York as a defendant and seeks a similar declaration; this motion remains pending. (Adv.Doc. # 12, p. 9.) Thus, through its addition of Fruit New York as a defendant, Magnetek seeks a declaratory judgment from the Connecticut state court that would impose liability on Fruit New York as to environ-

mental matters related to the Bridgeport Plant.

With respect to Debtors' bankruptcy proceeding, Old Fruit and its related subsidiaries, including Fruit New York, entered into a settlement and release agreement ("Settlement Agreement"), which the Court approved on April 25, 2002. In pertinent part, the Settlement Agreement provides that:

> [Old Fruit and Magnetek ("Releasing Parties")] hereby unequivocally release and forever discharge each other and their affiliates ... from any and all rights, claims, demands, actions, liabilities, causes of action, costs, losses, suits ... whether known or unknown, foreseen or unforeseen, suspected or unsuspected, fixed or contingent, disclosed or undisclosed, matured or unmatured ... which any of the Releasing Parties ever had or may have against the Released Parties pursuant to the Magnetek Agreements and the Magnetek Judgement, and, with respect to the matters addressed in the Magnetek Agreement and the Magnetek Judgement. MagneTek hereby withdraws *with prejudice* any proofs of claim it has filed against Fruit of the Loom in the referenced bankruptcy proceedings....

(Adv.Doc. # 1, ex. 4, pp. 5–6, § 4.) The Magnetek Agreements include agreements among Old Fruit, NWI, and Magnetek as to the Bridgeport Plant and its environmental matters. (*Id.* at pp. 1–2.)

Further, § 9 of the Settlement Agreement, labeled "Bankruptcy Court Jurisdiction," provides that: "[w]hile the Bankruptcy Cases are pending and thereafter, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters relating to or arising under the [Settlement] Agreement." (*Id.* at p. 7, § 9.) Similarly, the order entered by the Court approving the Settlement Agreement ("Order") states that: "[t]he Court shall retain jurisdiction to hear and determine all matters related to implementation and enforcement of this Order." (Doc. # 4437.) The Settlement Agreement is governed by the laws of the state of New York. (Adv.Doc. # 1, ex. 4, pp. 6–7, § 8.)

On May 5, 2009, Plaintiffs initiated this adversary proceeding. Plaintiffs seek a declaration that the claims asserted by Magnetek in the Connecticut state court actions against Fruit New York were fully and finally waived, released, and discharged under the Settlement Agreement, and that Magnetek's addition of Fruit New York as a defendant in those actions constitutes a breach of the Settlement Agreement. (Adv.Doc. # 1, p. 11, ¶ 50.)

Pursuant to 28 U.S.C. § 1334(c), on June 8, 2009, Magnetek filed the instant motion requesting that the Court abstain from exercising jurisdiction over this adversary proceeding. Magnetek argues that the Court must abstain in accordance with the mandatory abstention prescribed by 28 U.S.C. § 1334(c)(2), or, in the alternate, the Court should choose to abstain based upon the permissive abstention allowed by 28 U.S.C. § 1334(c)(1). (Adv. Doc.# 12.) In contrast, Plaintiffs contend that because the Court retained jurisdiction over the Settlement Agreement and accompanying Order, the Court cannot abstain as it already decided to retain jurisdiction. Alternatively, Plaintiffs maintain that mandatory abstention is inapplicable and that permissive abstention is not warranted. (Adv.Doc.# 19.)

## DISCUSSION

*Exclusive Jurisdiction*

Plaintiffs contend that the retention of jurisdiction provisions in the Settlement Agreement and the Order preclude this Court from reaching the abstention ques-

tion as both parties necessarily have agreed to this Court's exclusive jurisdiction and this Court already has retained exclusive jurisdiction. This conclusion contradicts a reported decision in this District. In *LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.)*, 312 B.R. 249 (Bankr.D.Del.2004), the court faced similar retention of jurisdiction language and a motion for abstention. In that case, post-petition, the debtor entered into an asset purchase agreement which provided that: "the parties agree that any dispute between or among them *arising out of* or *based upon* this Agreement shall be submitted to and resolved by the [Delaware] Bankruptcy Court." *Id.* at 255 (emphasis added). The order which approved the asset purchase agreement likewise provided that: "this [Delaware Bankruptcy] Court *retains jurisdiction* (i) to enforce and implement the terms and provisions of the Agreement, . . . (iv) to resolve any disputes, controversies or claims arising out of or relating to the Agreement, and (v) *to interpret, implement and enforce the provisions of this Order.*" *Id.* (emphasis added). The debtor initiated an adversary proceeding in the Bankruptcy Court for the District of Delaware to pursue a claim arising from the asset purchase agreement. The other party to the agreement filed a motion for abstention.

In response to the debtor's argument that the party seeking abstention had waived its right to seek both mandatory and permissive abstention by executing the agreement and its forum selection clause, the court first noted that, in the Third Circuit, forum selection clauses are prima facie valid. *Id.* at 256 (*citing In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987) and *Coastal Steel v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983)). However, the court went on to hold that although the parties to the agreement had waived their rights to seek

mandatory and permissive abstention, the waiver did not prevent the court from taking up permissive abstention sua sponte pursuant to 28 U.S.C. § 1334(c)(1). *Id.* at 256–57. I hold the same in the instant case.

■ As an initial matter, that the forum selection clause in the Settlement Agreement is labeled "Bankruptcy Court Jurisdiction" does not distinguish it materially from forum selection clauses labeled as such; the effect of the clause is the same: jurisdiction is sited in the prescribed court. *See Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir.1998) (using precedent involving forum selection clauses in its discussion of retention of jurisdiction clauses); *Kane v. Mfrs. Life Ins. Co.*, 2009 WL 78143, **1–2, 2009 U.S. Dist. LEXIS 1630, at *2–*3 (D.N.J. Jan. 9, 2009) (using the terms "retention of jurisdiction provisions" and "forum selection clauses" interchangeably). Thus, in accordance with Third Circuit precedent, as neither party has argued against the enforceability of the jurisdiction clauses in the Settlement Agreement and the Order, the clauses are valid. *See, e.g., Coastal Steel*, 709 F.2d at 202 (noting that forum selection clauses are prima facie valid).

■ Further, as held by the court in *In re LaRoche Indus.*, the jurisdiction clauses in the Settlement Agreement and the Order entered into by Magnetek constitute a waiver of any right to seek mandatory or permissive abstention. *See also Street v. End of the Road Trust*, 386 B.R. 539, 547 (D.Del.2008) (holding that valid forum selection clauses entered into by the parties seeking abstention "constitute a waiver of any right to mandatory abstention under section 1334(c)(2)"). Nevertheless, this waiver does not prevent me from sua sponte addressing the issue of permissive abstention. 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in

the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."). *See also CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602 (S.D.N.Y.2008) (considering permissive abstention as to an issue arising from an agreement specifically covered by a bankruptcy plan despite a clause in that bankruptcy plan providing for retention of jurisdiction in the bankruptcy court); *In re Alliance Leasing Corp.*, 2007 WL 5595446, 2007 Bankr.LEXIS 4637 (Bankr.M.D. Tenn July 3, 2007) (granting permissive abstention despite a "retention of jurisdiction" clause in a bankruptcy plan that covered the instant dispute); *Gilbane Bldg. Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.)*, 337 B.R. 864, 877 (Bankr. S.D.Tex.2006) (discussing permissive abstention despite retention of jurisdiction language in a bankruptcy plan, and specifically noting that "[t]he decision to [permissively] abstain is left up to the broad discretion of the bankruptcy court").[1]

*Permissive Abstention*

 Pursuant to 28 U.S.C. § 1334(c)(1), a district court, "in the interest of justice, or in the interest of comity with state courts or respect for state law, [may abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Courts consider twelve factors in determining whether permissive abstention is appropriate:

1. the effect or lack thereof on the efficient administration of the estate;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficulty or unsettled nature of applicable state law;

4. the presence of a related proceeding commenced in state court or other nonbankruptcy court;

5. the jurisdictional basis, if any, other than section 1334

6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. the substance rather than the form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state

---

1. Plaintiffs argue that "under well-settled case law, the Court's retention of 'jurisdiction' means 'exclusive jurisdiction.'" (Adv.Doc. # 19, p. 8.) In making this statement, Plaintiffs cite cases from the 2nd Circuit, the 9th Circuit, and the state of New York. *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir.1998); *United States v. American Soc'y of Composers, Authors and Publishers (In re Karmen)*, 32 F.3d 727, 731–32 (2d Cir.1994); *Wollman v. Jocar Realty Co., Inc.*, 19 A.D.3d 210, 211, 799 N.Y.S.2d 17 (N.Y.App.Div.2005). Others courts have opined differently, noting that mere retention of "jurisdiction" should be distinguished from more specific retention of jurisdiction, such as retention of "exclusive jurisdiction." *See Kane v. Mfrs. Life Ins. Co.*, 2009 WL 78143, **4–5, 2009 U.S. Dist. LEXIS 1630, at *11–14 (D.N.J. Jan. 9, 2009);

*Eisenbud v. Omnitech*, 1996 WL 162245, **1–2, 1996 Del. Ch. LEXIS 37, at *3–5 (Del. Ch. Mar. 21, 1996). I do not need to reach the question of whether retention of "jurisdiction" means "exclusive jurisdiction." 28 U.S.C. § 1334(c)(1) grants me the ability to sua sponte take up whether I should abstain from hearing a particular proceeding. That the parties may have sited jurisdiction merely concomitantly or definitely exclusively in this Court does not affect that ability. Indeed, the abundance of cases in which courts have addressed permissive abstention in the face of similar retention of jurisdiction and forum selection clauses, including in those jurisdictions in which courts have held that "jurisdiction" means "exclusive jurisdiction," demonstrates that my decision to sua sponte raise permissive abstention is appropriate.

court with enforcement left to the bankruptcy court;

9. the burden of the court's docket;

10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial; and

12. the presence of non-debtor parties.

*In re LaRoche Indus.*, 312 B.R. at 253–54; *see also In re Integrated Health Services, Inc.*, 291 B.R. 615, 619 (Bankr.D.Del.2003); *Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.)*, 289 B.R. 27, 29 (Bankr.D.Del.2003); *In re Continental Airlines, Inc.*, 156 B.R. 441, 443 (Bankr. D.Del.1993). The evaluation of these factors is not "merely a mathematical exercise." *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715 (Bankr.D.Del. 1996). Some factors are more substantial than others, such as the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core under 28 U.S.C. § 157. *In re LaRoche Indus.*, 312 B.R. at 255; *In re Encompass Servs.*, 337 B.R. 864 at 878.

I will address the factors in order. First, the instant action will not have any significant effect on the efficient administration of the estate. The Court approved Debtors' joint plan of reorganization on April 19, 2002, and the plan took effect on April 30, 2002, over seven years ago. (Adv.Doc.# 1, p. 3, ¶ 10.) There is little chance that the action will have an effect on the administration of the estate. Moreover, mere familiarity with the bankruptcy case is not sufficient to "militate against abstention." *In re Integrated Health*, 291 B.R. at 620; *In re LaRoche Indus.*, 312 B.R. at 254. Accordingly, this factor favors abstention.

Second, this adversary proceeding is an ordinary contract dispute involving claims for declaratory relief based on breach of contract. The contract at issue is governed by New York state law. The Settlement Agreement's release provision is of a "plain vanilla" type; no provision of the Bankruptcy Code is implicated. As such, state law issues predominate over bankruptcy issues. This factor favors abstention.

Third, the state law issues as to the asserted claims involve straightforward contract issues. Though Magnetek contends that the state law issues "present difficult questions of state law on which there is no relevant precedent," in so stating, it addresses Connecticut state law issues as to the Connecticut actions deriving from the Transfer Act, which, though underlying the Plaintiffs' claims, are unlikely to be implicated in the instant adversary proceeding. (Adv.Doc.# 12, p. 24.) Nevertheless, "even if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding . . ., this factor weighs in favor of having the state court decide it." *In re Integrated Health*, 291 B.R. at 620. However, in this case, the state law issues that predominate are state law issues as to a state other than the state to which the Court may ultimately permissively abstain, which diminishes the weight of this factors' underlying policy that a state court be allowed to decide issues of its state law in the first instance. Accordingly, I consider this factor neutral.

Fourth, there are related proceedings already commenced in the Connecticut state court. Nevertheless, though this factor favors abstention, because Magnetek agreed to this Court's jurisdiction, I will give it little weight. *See In re LaRoche Indus.*, 312 B.R. at 254 ("[T]he fact that

[the relevant party] ignored the agreement ... should not be counted in its favor.").

Fifth, this Court's jurisdictional basis rests solely upon 28 U.S.C. § 1334. There is no federal question jurisdiction pursuant to 28 U.S.C. § 1331, and there is no diversity jurisdiction under 28 U.S.C. § 1332 as both Plaintiffs and Magnetek are Delaware corporations. Thus, this factor favors abstention.

·Sixth, the instant adversary proceeding is remote both in substance and time from the main bankruptcy case. The proceeding involves an agreement merely executed as part of the main bankruptcy case. That is was executed in that context does not "inextricably" intertwine it with the main bankruptcy case. *See In re Loewen Group Int'l, Inc.*, 344 B.R. 727, 730–31 (Bankr.D.Del.2006) (quoting *In re La-Roche Indus.*, 312 B.R. at 254). Further, the proceeding and the main bankruptcy case are separated by nearly seven years. Accordingly, this factor favors abstention.

Seventh, the instant adversary proceeding is not a "core" proceeding under 28 U.S.C. § 157(b). Proceedings "arising under" and "arising in" a case under the Bankruptcy Code are "core" proceedings. *See In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir.2008); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225–26 (3d Cir.2004). A proceeding "arises under" the Bankruptcy Code only if the Bankruptcy Code creates the cause of action or provides the substantive right invoked. *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir.2006). The instant adversary proceeding does not "arise under" the Bankruptcy Code: Plaintiffs allege breach of contract, claims which solely involve state law. A proceeding "arises in" a case under the Bankruptcy Code if the proceeding has "no existence outside of the bankruptcy." *Id.* at 216 (quoting *U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556

(3d Cir.1999)). The instant adversary proceeding does not "arise in" a case under the Bankruptcy Code: the ordinary contract dispute exists outside of bankruptcy. Thus, the adversary proceeding is not a "core" proceeding, and this factor favors abstention. *See, e.g., In re LaRoche Indus.*, 312 B.R. at 254.

Eighth, as there are no "core" bankruptcy issues, severance of state law claims is not necessary. Consequentially, this factor is inapplicable.

Ninth, with respect to the burden on this Court's docket, I would note the obvious. We are in the midst of the most severe recession and credit crisis in decades, and the volume of major chapter 11 filings in this Court has risen to an unprecedented level. Accordingly, this factor favors abstention.

Tenth, there exists little risk that Plaintiffs are engaging in forum shopping. This Court was the situs for the underlying bankruptcy case, and the Settlement Agreement includes a provision placing jurisdiction over disputes arising under it in this Court. This factor does not favor abstention.

Eleventh, though neither party has requested a jury trial yet, breach of contract is triable by a jury. As this Court cannot conduct a jury trial, this factors favors abstention. *See, e.g., In re LaRoche Indus.*, 312 B.R. at 255.

Twelfth, Magnetek is a non-debtor. Though Plaintiffs, as reorganized entities related to Debtors, are former debtors, "[m]erely having once been a debtor in a bankruptcy case is insufficient to require the bankruptcy court to continue to resolve all disputes involving that party." *Id.* As such, this factor favors abstention.

The majority of the factors favor abstention. Moreover, those factors considered

more substantial—the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core—indicate the appropriateness of abstention. Plaintiffs' claims raise an ordinary contract law issue. The Settlement Agreement contains standard contract language. The Connecticut state court is just as competent to adjudicate the instant claims. Further, the Connecticut state court already is hearing related matters. In the interests of judicial efficiency, abstention appears appropriate. Consequently, I will abstain.

## CONCLUSION

For the reasons stated above, Magnetek's motion requesting that this Court abstain from exercising jurisdiction over the instant adversary proceeding is granted.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendant's motion (Doc. # 12) for abstention is **GRANTED.**