### In re GLOBAL CROSSING, LTD. SECURITIES LITIGATION.

**Keith Beightol, Plaintiff,**

v.

**UBS Painewebber, et al., Defendants.**

**John Frank Clark, Plaintiff,**

v.

**UBS Painewebber, et al., Defendants.**

**Nos. 02 Civ. 910 GEL, 02 Civ. 1186 GEL, 02 Civ. 1187 GEL.**

United States District Court,
S.D. New York.

June 30, 2003.

J. Brad Pigott, Pigott Reeves Johnson & Minor P.A., Jackson, MS, for Plaintiffs Keith Beightol and John Frank Clark.

Sean Riley, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP, Los Angeles, CA, for Defendant Gary Winnick.

## OPINION AND ORDER

LYNCH, District Judge.

The plaintiffs in these two cases, having sustained losses due to the collapse in value of Global Crossing, Ltd., securities, assert fraud claims against their stockbrokers, who recommended Global Crossing stock to them, and against Gary Winnick,

founder and former cochairman of Global Crossing. The complaints were carefully drafted to include only claims under the state laws of Mississippi and California, thus precluding federal question jurisdiction, and to include as defendants individual brokers who are Mississippi citizens, thus defeating diversity jurisdiction.

Defendants nevertheless removed the cases to federal court, asserting that there is federal jurisdiction under 28 U.S.C. § 1334(b) because the cases are "related to" bankruptcy proceedings involving Global Crossing. Plaintiffs move to remand to state court, arguing (1) that the Court lacks jurisdiction because their claims are not "related to" the Global Crossing bankruptcy; (2) that even if jurisdiction exists, the Court is nevertheless required to abstain from hearing the case under 28 U.S.C. § 1334(c)(2) because the action commenced, and can be "timely adjudicated," in a state forum; and (3) that even if abstention is not required, discretionary abstention under 28 U.S.C. § 1334(c)(1) is justified. The motions will be denied.

### I. *Federal Jurisdiction*

■ Federal jurisdiction exists substantially for the same reasons given in the thorough and scholarly opinion of Judge Cote in the remarkably similar case of *In re WorldCom, Inc., Securities Litigation*, 293 B.R. 308, 317–24 (S.D.N.Y.2003). As Judge Cote pointed out, under the prevailing test,

> a civil proceeding is "related to bankruptcy" if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." [*In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir.1984)] (emphasis in original partially removed); *see Celotex [Corp. v. Edwards]*, 514 U.S. [300,] 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403

[ (1995) ]. For a federal court to have "related to" jurisdiction over an action, "the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." [*Id.*] (citation omitted).

293 B.R. at 317. *See also In re Cuyahoga Equip. Co.*, 980 F.2d 110, 114 (2d Cir.1992) (adopting "any conceivable effect" test). Here, as in *WorldCom*, the possibility that litigation against an officer of a bankrupt corporation could lead to a claim against the corporation for contribution based on the wrongdoing of other corporate employees would certainly have a "conceivable effect" on the bankrupt estate. Plaintiffs make little attempt to dispute this conclusion.

### II. *Mandatory Abstention*

Nor is abstention required. Some courts would find § 1334(c)(2) inapplicable here. That statute provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim ... with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain ... if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Several courts have found that the use of the indefinite article "an" with respect to the state action, following the reference to the state-law proceeding already pending in federal court, compels the conclusion that the statute contemplates situations where there is a second, parallel proceed-

ing pending in state court. And in such situations, the action required is abstention, not remand. Remand of removed actions is separately provided for in 28 U.S.C. § 1452(b), "on any equitable ground"—a discretionary standard that makes no reference to the standard set in § 1334(b) for mandatory abstention. *See In re River Center Holdings, LLC*, 288 B.R. 59, 66–68 (Bankr.S.D.N.Y.2003) (noting national and intracircuit split, but also that "great majority of reported caselaw" in this district holds that mandatory abstention inapplicable to removed cases); *Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 12–13 (S.D.N.Y.2002) (noting plain language of statute which requires that "a proceeding be pending in state court," and absence of any reference to abstention in the statute authorizing remand of cases removed under bankruptcy jurisdiction). Other courts, however, have flatly rejected this interpretation. *See, e.g., In re Southmark Corp.*, 163 F.3d 925, 929 (5th Cir.1999).[1]

■ This Court need not address that dispute. Even assuming § 1334(c)(2) applies in this situation, it would not require mandatory abstention. Again, the *World-Com* decision is instructive. The court there rejected the plaintiff's "naked assertion" that the removed action could be more quickly adjudicated in state court, finding that the complexity of the actions, and the overlapping motion practice and discovery that would ensue from the pendency of separate federal and state litigations, would undermine any chance of the required "timely adjudicat[ion]" in state court. 293 B.R. at 331.

At oral argument, plaintiffs did not contend that *WorldCom* was wrongly decided, but instead attempted to distinguish it by emphasizing that the plaintiffs there relied on the "naked assertion" that the state court action "will be more quickly adjudicated in the State court," *id.*, while plaintiffs' similar claim here is not "naked," but comes clothed in, or buttressed by, two pieces of evidence: first, a rule adopted by the Supreme Court of Mississippi, setting forth "standards" for the disposition of cases in the Chancery Courts of Mississippi, which propose that general civil cases should be disposed of within 18 months from the filing of the complaint, and second, a certification from the administrator of the Chancery Court for the Nineteenth Chancery District, dated July 19, 2002, that if the cases had been remanded to state court at that time, trial dates would have been available no later than December 2002. (Mot.Ex. A.)

But if plaintiffs' claim that their action can be wrapped up in a few months in Mississippi is not quite "naked," these pieces of evidence constitute scanty attire indeed. Neither of the items on which they rely provide any reason to doubt that in this case, as in *WorldCom*, resolution of the complex issues asserted by plaintiffs in their fraud claims will be anything but speedy, and indeed that the pendency of multiple proceedings in multiple jurisdictions will contribute to slowing down the resolution of the Global Crossing claims in any court.

The Mississippi Supreme Court's standards, on their face, "represent aspirational goals against which to measure the actual movement of cases in the trial courts"

---

1. The Second Circuit has not directly addressed the issue. The Court recently noted, however, in a case in which the applicability of § 1334(c)(2) was not squarely presented to the Court of Appeals, that "subsection 1334(c)(2) specifies abstention, not remand, and we assume that the District Court's remand order was grounded on 28 U.S.C. § 1452(b)." *Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*, 318 F.3d 392, 398–99 (2d Cir.2003).

and "should not be treated as rules of court." *In re Time Standards for Trial Courts,* 2001–AD–00001 (Miss.2001), Order of Nov. 15, 2001 (adopting standards), Exhibit A. Like provisions of the federal Civil Justice Reform Act, 28 U.S.C. § 473, or those of the federal Speedy Trial Act applicable to criminal cases, 18 U.S.C. §§ 3161–3174, such rules are and must be subject to the need for the courts to take the time necessary to develop the record and address the issues in particular cases. *See Time Standards* (noting that some "factors that determine the movement of the business of the courts" are not "within the control of the judges presiding"). Under this Court's individual rules of practice, the standard Civil Case Management Plan calls for cases to be trial ready in six months, and many cases are indeed disposed of within that period. But litigation involving complex accounting issues and extensive discovery such as this one cannot reasonably be expected to be dealt with in the time periods set for ordinary tort and contract cases. Nothing about the Mississippi Supreme Court's standards provides any indication that this case would be resolved in 18 months, or even that the standards would aspire to do so in a case of this magnitude.

For similar reasons, the certification of the Chancery Court as to available trial dates is unpersuasive. This Court too has trial dates available within the next few weeks. But that has no bearing on when a complex case can be ready for trial and fully adjudicated. As Judge Cote noted in *WorldCom,* in language equally applicable here:

> The size of the ... bankruptcy, the close connections between the defendants in this action and the debtor, and the complexity of this litigation suggest [that] remanding to state court could slow the pace of litigation dramatically. If each of the actions removed from state court

were remanded, it would lead to duplicative motion practice and repetitious discovery, as well as requir[e] common issues to be resolved separately by courts across the country.

*WorldCom,* 293 B.R. at 331. Indeed, the speed with which these cases could be tried in Mississippi might even be subject to decisions by this Court itself, as the Securities Litigation Reform Act gives federal courts before which securities class actions are pending broad powers to stay discovery in related state litigation. *See* 15 U.S.C. § 78u–4(b)(3)(d); *see also Newby v. Enron Corp.,* Dkt. No. H–01–3624, slip op. at 19 (S.C.Tex. Aug. 9, 2002) ("[G]iven the necessity of orderly proceedings in [this] massive litigation, this Court, in aid of its jurisdiction, has had to enjoin state court cases from discovery that would interfere with that schedule.")

■ In short, § 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court. Far from promoting "timely adjudicat[ion]" of plaintiffs' claims, to remand here would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court.

III. *Discretionary Abstention/Equitable Remand*

■ Finally, plaintiffs alternatively seek permissive abstention under § 1334(c)(1) and, implicitly, equitable remand under

§ 1452(b). However, for essentially the reasons stated above, the desirability of maintaining all these actions in one forum clearly militates against any such action. *See also WorldCom*, 293 B.R. at 332–34.

## CONCLUSION

For the reasons stated above, the motions to remand and/or abstain are denied.